O’NIEDD, C. J.
 

 On the 22d of November, 1915, Dr. Currey Cappel sold to Chester F. Knoll the Dive Oak Plantation, having an area of 1,430 acres, in the parishes of Rapides and Avoyelles. The price was said to be $45,-000, but was exactly $44,990, payable in eleven annual installments of $4,090 each, represented by Knoll’s eleven promissory notes, made payable to his own order and indorsed by him, payable on the 1st day of January, 1917, to 1927, inclusive, and secured by the vendor’s lien and a mortgage on the plantation. The interest, at 6 per cent, per annum, was payable annually, and was represented by 11 so-called interest notes, signed by Knoll, made payable to his own order and indorsed by him, payable on the 1st of November, 1916, to 1926, inclusive, the first note being for $2,700, the second for $2,454.60, the third for $2,209.10, the fourth for $1,963.70, etc., each note being for an amount equal to 6 per cent, of the unpaid balance of the purchase price. The interest notes were also secured by the vendor’s lien and a mortgage on the plantation, and all of the notes bore 6 per cent, interest from maturity, with the stipulation for the payment of 10 per cent, attorney’s fee.
 

 Knoll paid the three principal notes maturing, respectively, on the 1st of January, 1917, 1918 and 1919, and paid the first four interest notes, which matured, respectively, on the 1st day of November, 1916, 1917, 1918 and 1919. The first principal note, due January 1, 1917, was paid, with the accrued interest amounting to $248, on January 5, 1918. The second and third of the principal notes, which matured, respectively, on January 1, 1918, and 1919, were paid, with accrued interest amounting to $1,276.58, on February 1, 1921. The first interest note, for $2,700, which was due on November 1, 1916, was paid, with accrued interest amounting to $13.50, on December 18, 1916. The second interest note, for $2,454.60, which fell due on November 1, 1917, was paid, with accrued interest amounting to $24.44, on January 5,1918. The third interest note, for $2,209.10, which fell due on November 1, 1918, was paid, with accrued interest amounting to $44.16, on March 8, 1919; and the fourth interest note, for $1,963.70, which fell due on November 1, 1919, was paid, with accrued interest amounting to $118.02, on November 22, 1920. The total amount paid by Knoll- on the price of the plantation, therefore, was $23,322.10, including interest.
 

 On the 12th of April, 1927, Dr. Cappel sued Knoll for a rescission of the sale for nonpayment of the price. The plaintiff admitted in his petition that he had collected the three principal notes which fell due on January 1, 1917, 1918 and 1919, respectively, and the four interest notes which fell due on November 1, 1916, 1917, 1918 and 1919, respectively, but averred that he was not obliged to return the' amount to Knoll, but was entitled to offset it against the rental value of the plantation, which Knoll had been possessing and
 
 *20
 
 cultivating for his own account for 12 years; and which rental -value amounted to $42,000. The plaintiff averred that,, as the defendant Knoll had then, on the 12th of April, commenced the cultivation of his crops of cane, cotton, and corn, and had obtained advances from third parties, whose claims should be protected by a lien on the crops, he (the plaintiff) desired that the judgment which he sought, rescinding the sale and giving him possession of the plantation, should become exigible on. January 1, 1928. Knoll did not answer the suit; and on the 3d of Hay, 1927, judgment by default was rendered against him, rescinding the sale and ordering him to surrender possession of the property to Dr. Cappel on January 1, 1928.
 

 Meanwhile, that is to say, on the 20th of December, 1921, Knoll gave the Citizens’ Bank & Trust Company, of Bunkie, La., a mortgage on the plantation to secure the payment of a note for $5,000, and on the next day gave the Meeker Sugar Refining Company a mortgage on the plantation to secure an indebtedness of $14,199.15. Therefore, on the 23d of June, 1927, Dr. Cappel brought this suit against the clerk of court, ex officio recorder of mortgages and conveyances for the parish of Rapides, and against the Citizens’ Bank & Trust Company and the Meeker Sugar Refining Company, to have their mortgages canceled. The recorder answered that he thought that the mortgages should not be canceled, but that he had no interest in the matter, and stood ready to obey the orders of the court. The Citizens’ Bank & Trust Company did not answer or make any appearance in defense of the suit. The Meeker Sugar Refining Company first excepted to the suit being brought by summary proceeding, and, in the alternative, pleaded that the plaintiff’s petition did not disclose a cause or right of action. Both- pleas were overruled, and it can hardly be disputed that-they were rightfully overruled.. A summary proceeding against' the recorder of mortgages, either by mandamus or by rule to show cause, is the appropriate proceeding by which to compel the cancellation of a mortgage or other incumbrance that has been judicially ordered, or ought to be, canceled. Savage v. Holmes, 15 La. Ann. 334; State ex rel. Deblieux v. Recorder, 25 La. Ann. 61; Lanaux v. Recorder of Mortgages, 36 La. Ann. 974; State ex rel. Busha’s Heirs v. Register, 113 La. 98, 36 So. 900; State ex rel. Macheca v. Dunn, Recorder of Mortgages, 148 La. 473, 87 So. 241; State ex rel. Hurwitz et al. v. Recorder of Mortgages et al., 165 La. 334, 115 So. 582; State ex rel. Metropolitan Land Co. v. Recorder of Mortgages et al., 166 La. 271, 117 So. 145.
 

 The plea of no cause or right of action, as we understand, was founded upon the failure of the plaintiff to allege or show that he had returned or tendered to Knoll the amount which Knoll had paid on the purchase price of the plantation. The allegation in the suit against Knoll, that the rental value of the plantation for the time during which Knoll had had possession amounted to $42,000, and /therefore exceeded the amount which Knoll had paid on the price of the plantation, was a sufficient allegation to justify the suing for rescission of the sale without returning the amount paid on the price, for it is well settled that, in an action for rescission of a sale for nonpayment of the price, although the plaintiff must return to the defendant, with interest, so much of the price as the plaintiff has received, he may offset such sum with the rental value of the property for the time during which the defendant has had possession by virtue of the sale. School Directors v. Anderson, 28 La. Ann. 739; Stevenson v. Brown, 32 La. Ann. 461; Wilmot & Co. v. Steamer Ouachita Belle, 32 La. Ann. 607; Ware v. Berlin, 43 La. Ann. 534, 9 So. 490; Vincent v. Phillips, 47 La. Ann. 1238, 17 So. 786; Succession, of Phillips, 49 La. Ann. 1019,
 
 *22
 
 22 So. 202; Succession of Delaneuville v. Duke, 114 La. 62, 38 So. 20.
 

 Answering the suit, the Meeker Sugar Refining Company pleaded that the judgment rescinding the sale was. obtained by collusion between Dr. Cappel and Knoll, to rid the property of the Meeker Sugar Refining Company’s mortgage, and that the dissolution of the sale was therefore, in effect, only a conventional retrocession of the plántation, subject to the mortgages in favor of third parties. The Meeker Company pleaded also that Dr. Cappel had encouraged the company to advance money to Knoll to cultivate the plantation, and had profited by the advances so made, and that Dr. Cappel had entered into an agreement with the Meeker Company -and Knoll, on the 19th of December, 1923, to withhold foreclosure of the mortgage, and execution of a certain judgment for .$6,000 which Dr. Cappel then had against Knoll, in consideration for the Meeker Company’s advancing to Knoll the money necessary to cultivate the plantation during 1924 and 1925, and that Dr. Cappel was thereby estopped to demand a dissolution of the sale for nonpayment of the price. Further answering, the .Meeker Company denied that Knoll owed Dr. Cappel anything for the rental value of the property, and averred that Dr. Cappel should account to Knoll not only for the payments which Knoll had made on the price of the plantation, with interest, but also for the improvements which Knoll had made on the plantation while he owned it, and for the taxes which he had paid, and that the result of the accounting would be a large balance due to Knoll, out of which the Meeker. Company’s mortgage should be paid.
 

 There is no merit in the plea that the judgment dissolving the sale was obtained by-collusion between. Dr. Cappel and Knoll, or' to defraud third parties having mortgages or-lien's on the plantation. The evidence in this case proves, beyond all doubt, that the only reason why Knoll did not urge any defense to the suit to rescind the sale was that he was hopelessly-insolvent, and had no just defense to urge. The balance which he owed to Dr. Cappel, on the price of the plantation, with accrued interest, amounted to $49,244.23. on the date of filing of the suit for rescisr sion of the sale. That — -without the 10 per cent, attorney’s fee — was as much as the property was worth. Knoll could not have denied truthfully that the rental value of the property for the 12 years in which he had possessed it and cultivated it -for his own account greatly exceeded the amount which he had paid on the price. There were 620 or 640 acres of the land in cultivation in sugar cane, cotton, and corn, the rental value of which cultivated area, according to the uncontradicted testimony, was $8 per acre, which made the rental value of the plantar tion nearly $5,000 per year. But, even at $3,-500 per year, the rental value for the 12 years was $42,000, which Dr. Oappel is entitled to have credit for, with interest at 5 per cent, per annum on each year’s rent, in the settlement of accounts between him and Knoll.
 

 There is no merit in the Meeker Company’s plea of estoppel. Dr. Cappel’s agreeing to withhold the foreclosure of his mortgage, from year to year, and his agreeing to withhold the execution of his judgment of $6,000 against Knoll,.in order that the Meeker Company might continue advancing money to Knoll to cultivate the plantation, did not in any sense oblige Dr. Cappel to waive his right eventually to demand a rescission of the sale for nonpayment of the price. The Meeker Company was not induced by any representation on the part of Dr. Cappel to advance.Knoll the money needed.for cultivating- the plantation. The inducement was, originally, the Meeker Company’s desire to buy .the crops of sugar cane for the company’s refinery, and,, afterwards;' the hope
 
 *24
 
 that Knoll might eventually succeed in paying his debt to the company.
 

 On the merits of the case, the district judge found that Dr. Oappel owed Knoll, for the payments he had made, and for-the taxes he had paid, and the improvements he had made on the plantation, $50,266.69; against which the judge gave Dr. Oappel credit for only $15,930 for the rental value of the plantation for the 12 years, including the interest thereon; thus leaving Dr. Oappel in debt to Knoll to the extent of $34,336.69. The judge therefore rejected Dr. Cappel’s demand, and directed the Meeker Sugar Refining Company “to proceed with the foreclosure of its mortgage, unaffected by the judgment of plaintiff rescinding and setting aside the sale of the said property from plaintiff to said Knoll,” etc. Dr. Oappel has appealed from the decision.
 

 Inasmuch as Knoll made no improvements on the plantation during the 12 years in which he occupied and cultivated it, the judgment which shows Dr. Oappel to be indebted to Knoll in the sum of $34,336.69, in the settlement of accounts, is manifestly wrong. The principal error in the judgment is in the failure to give Dr. Oappel credit for the rental value of the property, except for 4 of the 12 years — in which 4 years Knoll is said to have made a profit of $9,785.05. He was allowed by the judgment free rent for the 8 years in which he made no profit. In a judgment dissolving a sale for nonpayment of the price, the plaintiff should be allowed to offset against the amount which he has received on the price the rental value of the property for the time during which the defendant owned it, and is not limited in that respect to the amount of the revenues or profits earned by the defendant. In referring to the rental value of the property in such cases, this court has sometimes used the term “rents and revenues” or “fruits and revenues,” as if it were synonymous with “rental value,” but, in every instance, the court has allowed the plaintiff in the action for rescission, not the “fruits” or “revenues,” but the rental value of the property. For example, in School Directors v. Anderson, 28 La. Ann. 741, the court said: “A restitutio in integrum must be made. The vendor returns the portion of the price paid, with interest from the date of payment, and the vendee returns the thing with its revenues. *
 
 *
 
 * It is therefore * * * further ordered that plaintiffs recover rent on sixty acres of land at eight dollars per acre from 1875, as calculated in the judgment, to date of delivery to plaintiffs.” And, in McKenzie v. Bacon, 41 La. Ann. 13, 5 So. 643, it was said: “It appears that the only portion of the property which bore any fruits consisted of 157 acres of land which they cultivated or rented out, as it suited their purposes, and from the evidence in the record we agree with the district judge that the rental thereof was not worth more than four dollars per acre per annum, or $628 per annum for the entire property of which they had the use and enjoyment.” If we should maintain that the defendant in this case must account, not for the rental value of the property, but for the profits which he earned, or the so-called “fruits and revenues” which the property produced during his ownership of it, the result would be that, in the rescission or dissolution of a sale, for nonpayment of the price, of property used by the purchaser for commercial purposes, the defendant would have to account for such profits, and only such profits, as his business earned during his ownership of the property, which would be unreasonable.
 

 The district judge was in error also in holding that Knoll was entitled to credit for the fifth interest note, for $1,718.40, due November 1, 1920, and the interest thereon, $25.77, and interest at 5 per cent, per annum from the supposed date of payment of
 
 *26
 
 the note, $572.95. The evidence shows, beyond any doubt, that Knoll paid only the first four of the interest notes. The judge was in error also in holding that Knoll was entitled to credit for $1,900 for improvements made on the plantation during his ownership. The evidence shows, without any doubt or contradiction, that no improvements were made on the plantation during Knoll’s ownership. All that Knoll did, in that respect, during his ownership of the property, was (1st) to rebuild, at a cost of $200, three cabins that were blown down by a storm; (2d) to build, at a cost of $300, a smaller barn in place of one that was destroyed by fire; • (3d) to build, at a cost of $300, a bridge to replace one that wore out; and (4th) to put new roofs on five cabins, at a cost of $375. The total cost of all of these replacements and repairs, therefore, was only $1,175. The defendant, in an action to rescind a sale for nonpayment of the price, is not entitled to reimbursement for ordinary repairs which he has made to the property, and which have not enhanced its value. McKenzie v. Bacon, 41 La. Ann. 8, 5 So. 640; Citizens’ Bank v. Miller, 44 La. Ann. 199, 10 So. 779.
 

 The, district judge found also that Knoll was entitled to credit for the taxes which he paid on the property during his ownership, which taxes, with interest, amounted to $10,693.20. If the defendant in an action for rescission of a sale for nonpayment of the price is allowed credit for the taxes which he has paid during his ownership of the property, the rental value of the property ought to be figured accordingly. The only question in this case is whether the plaintiff owed any reimbursement to the defendant at the time when the suit was filed ; and that depended upon whether the payments which the defendant had made on the price of the property, plus any enhanced value resulting from improvements made by him during his ownership of the property, exceeded the rental value of th'e property for the time in which the defendant owned and possessed it and cultivated it for his own account. The rental value of this plantation, to an owner having to pay the taxes and cost of upkeep, was, as we have said, nearly $5,-000 per annum. But, even at $3,500 per annum, the rent which was chargeable to the defendant for the 12 years in which he owned the property was $42,000, and the interest at 5 per cent, per annum, calculated on each year’s rental, amounted to $11,550, thus making the indebtedness $53,550, at the time of filing the suit. The total amount which Knoll paid on the price of the property was, as we have shown, $23,322.10, and the interest, calculated on each payment, at 5 per cent, per annum, amounted to $9,686.31, thus making a total sum of $33,008.41, which Knoll had the right to offset against the $53,-550 of rental value, including interest, and thus leaving a balance of $20,541.59 to the credit of Dr. Cappel. Therefore Dr. Cappel was not obliged to make any tender or reimbursement of any of the partial payments which Knoll had made on the price of the property. In fact, there would have been no reimbursement due to Knoll even if he should have been credited with the taxes which he paid, and which, with 5 per cent, interest to the date of the filing of the suit, the district court found amounted to $10,693.20 — and even if Knoll should have had credit fur the $1,900 which the district judge allowed for improvements to the property — and even if he should have had credit for an item of $1,-800 which is said to have been paid to Dr. Cappel by the Meeker Sugar Kefining Company for Knoll’s account. There is no just method of accounting which would show that Dr. Cappel owed reimbursement to Knoll at the time of filing of the suit, for rescission of the sale.
 

 “Generally speaking, no doubt, in actions to rescind contracts of sale for nonpayment
 
 *28
 
 of the price, the plaintiff must tender so much of' the price as may have been paid; but the rule is no broader than the reason upon which it is founded, and, where it seems likely that upon a final adjustment there will be nothing due the defendant, such tender need not be made.” Succession of Delaneuville v. Duhe, 114 La. 62, 38 So. 20.
 

 As the record does not show that the Citizens’ Bank & Trust Company, of Bunkie, was cited or served with the rule to show cause why the bank’s mortgage should not be canceled, we shall not render a judgment against the bank. The annulling of the judgment appealed from will reserve the plaintiff’s right to-bring another proceeding, if necessary, to compel the cancellation of the bank’s mortgage.
 

 Tlie judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the defendant, clerk of court, and ex officio recorder for the parish of Rapides, shall cancel and erase the inscription of the mortgage given by Chester F. Knoll in favor of the Meeker Sugar Refining Company to secure the payment of $14,199.15, recorded in Mortgage Book 91, p. 623, of date the 21st of December, 1921. The defendant Meeker Sugar Refining Company is to pay all costs of this suit.