## MARTIN v. GRAVITY DRAINAGE DIST. NO. 14 OF PARISH OF ST. LANDRY.

### No. 997.

Court of Appeal of Louisiana. First Circuit.

June 30, 1932.

Dubuisson & Dubuisson, of Opelousas, for appellant.

A. V. Pavy and R. Lee Garland, both of Opelousas, for appellee.

LE BLANC, J.

This is a suit for damages against a gravity drainage district, brought by a property owner whose lands are embraced within the corporate limits of the district. The complaint is that the authorities in charge of the district widened and deepened unnecessarily an old artificial ditch on plaintiff's property, thus taking some of his property without having had to do so. It is alleged that there were 2.18 acres of plaintiff's property so used, including the excavation and the piling of the spoil dirt on his land adjacent to the newly constructed canal, for which he seeks to recover the sum of $200. He also claims that the subsoil or spoil dirt from the bottom of the canal has greatly impaired the fertility of the soil on his farm, because of the leaching or spreading of that dirt over his land, causing him further damage in the sum of $100. The gravamen of the plaintiff's complaint, it would seem, is found in the allegations contained in article XI of his petition, where he avers, in substance, that the drainage canal (referring to another canal) was of ample capacity or could have been made so at slight extra cost, to take care of all the drainage in the district, but the commissioners, "through spite and spleen against him for having opposed the inclusion of his land or any part thereof within the boundaries of the district, determined, without any necessity therefor, to greatly widen and deepen and did dredge, greatly widen and deepen" the said artificial ditch on his property.

We might state now that there is not a bit of testimony in the record to show that the drainage district commissioners were actuated by spite or spleen against any one in following the course they did, and plaintiff's recovery, if any, has to depend on his ability to show how much of his land was actually taken in this new project and its actual value. His other claim for impairment to the fertility of his soil has to rest on what proof he has offered to show that he has been damaged to any extent in the manner he alleged.

In its answer, the defendant admits that it excavated the canal on plaintiff's property

and necessarily it had to pile the spoil dirt on the adjacent bank. It avers that the canal to which the plaintiff refers was established on the property, with the consent of the then owner, in the year 1884, and, while it admits that this old canal, which is called "the old ditch" was dredged, it denies that it was made any deeper or wider than was necessary to meet the drainage requirements of plaintiff's land as well as of all other lands within the district. It pleads estoppel based on plaintiff's silence and lack of protest at the time the work was being done, and pleads further that it was vested by law with control of the canal channel for a distance of 100 feet on each side of same. It also pleads that plaintiff has derived benefits from the canal which are greater than the damages he alleges he has sustained, and finally urges the prescription of ten years under article 765 of the Civil Code, as amended by Act No. 25 of 1904, as a bar to plaintiff's action.

The district judge, in a written opinion, holds that the canal as presently constructed is no deeper or wider than the old ditch which existed since 1884, and he concludes by stating that "the law and the evidence is clearly with defendant drainage district and the plea of prescription interposed by it under article 765 of the Civil Code is now maintained and plaintiff's suit is dismissed at his costs." From that judgment, the plaintiff has appealed.

■ We do not believe that the article of the Civil Code relied on to support the plea of prescription has application in an action of this kind. It deals with a prescription that accrues under a servitude, and there is no question of servitude involved in this suit. The demand is one for the recovery of the value of land taken in unnecessarily widening and deepening an already existing canal and for damages resulting therefrom. As put at issue by the defendant, and as also appears from the testimony, we find no right of servitude claimed, and none is shown. The judgment, in so far as it maintained the plea of prescription, was therefore erroneous, and the plea is now overruled.

■ Defendant's plea of estoppel was not passed on by the trial judge and is not urged before us. The rule seems to be well established, however, that, whilst the owner who permits his land to be entered and used for a purpose for which it may have been expropriated, cannot maintain an action to dispossess the one who so used it, he nevertheless is not deprived of his right to sue for the value of his land so taken and for the damages he claims to have suffered by reason of the construction or work placed thereon. Hart v. City of Baton Rouge, 145 La. 173, 82 So. 79; St. Julien v. M. L. & T. R. R. Co., 35 La. Ann. 924.

■ Defendant's pretended control over plaintiff's property is based on the provisions of Act No. 61 of 1904. We have examined that statute, and find that it gives to levee and drainage districts in this state control over all public drainage channels, within the limits of their respective districts, and for a space of one hundred feet on each side thereof. Section 2 of the act, which prescribes a penalty for violation of the regulations prescribed by the district, shows clearly that the control so vested has reference only to maintaining the efficiency of the canal after it has been constructed, and cannot in any way be construed as taking away from the property owner his right to recover the value of his property used in constructing it.

■ The next contention of the defendant, namely, that the benefit derived by the plaintiff from the canal is greater than the damage alleged to have been sustained, even though it be conceded that there was damage, is readily answered by the following citation from the case of Brittingham v. Board of Commissioners of Drainage District No. 1 of Tangipahoa Parish, 167 La. 368, 119 So. 259, 261: "Defendants seek to offset the damages suffered by plaintiff by the benefits that the remainder of the tract has derived from the enterprise. Defendants are not entitled to such an offset. Plaintiff is presumed to pay for these benefits by the taxes he pays on the land for the digging of the canal. He cannot be made to pay twice for the improvement—once, by way of taxation, and again, by way of offsetting the damages he has suffered with the benefits that his land has received."

Having disposed of all other contentions of the defendant, we now come to a consideration of issues on which a solution of the case really depends. A decision rests with the answer that is to be given to these two questions: Has the widening and deepening of the old ditch on the plaintiff's property resulted in taking more of his property than was included in the old ditch, and has he suffered the damage he claims to the soil on his farm by reason of the leaching or spreading of the spoil dirt thereon?

■ Answering these questions in the reverse order, we state without much hesitation that plaintiff failed to show that he has sustained any damage in the way he claims. He testified that the dirt excavated from the bottom of the canal is a red clay soil, that being the last dirt taken, it was deposited on the top of the embankment, and that, when it rains, this red clay is washed over his farm, leaving a visible stain. At the time of the trial he stated that it extended about twenty feet. He does not make it very clear in what manner his soil has been affected, nor does he show that any of his crops have been

damaged. He is not supported in this claim by any of the several witnesses called on his behalf, and, for lack of proof, it will be denied.

 On the question involving the value claimed for the quantity of land taken, we find ourselves in some disagreement at least with the learned trial judge. He holds that there is no evidence in the record to show that the canal as presently constructed is any wider or deeper than the original ditch excavated in the year 1884. We believe we are safe in relying on the engineer in charge of the project in determining whether the new canal took in some of plaintiff's land or not. The testimony of Mr. A. J. Carmouche, the engineer in this case leaves but little doubt on that point. In 1884, the year in which the old ditch was dug, the property belonged to a man named Clement Hollier, who gave the right of way to the authorities having the work in charge. In 1929, it appears that this ditch was overgrown with briars, small trees, and brush which interfered with its taking care of the water which it helped to relieve in the district. It became necessary according to Carmouche, to dredge it out. He says that it had a very irregular bottom, and, in order to effect proper drainage, it was necessary to deepen and widen it to some extent. It was the shortest way to carry off the water and also the most effective, when it is considered that the project had for its purpose the drainage of the whole district. He also refers to the fact that the excavated dirt from the canal was piled on plaintiff's land. There can be no other conclusion therefore than that some of the plaintiff's property was taken for which he might recover. Unfortunately for him, however, when we come to ascertain the amount so as to fix a value, we are left without proof of a nature positive enough to enable us to do so. When asked to "Please tell us how many acres of Mr. Martin's land was taken by the excavation of the ditch and the dumping of the dirt on his side of the ditch," Mr. Carmouche answers, "2.18 acres."

We read his testimony in vain to find out if these 2.18 acres were included in the site of the old ditch which has been absorbed by the canal as it now exists, or whether he means to inform us that they constituted additional land that was taken in on this new project. If part of these 2.18 acres comprised what was the old ditch, plaintiff could not recover for that much, because, as we understand it, the old ditch was already part of the drainage system of the district, right of way over which had been given as long ago as the year 1884. Besides this, in answer to a further question: "About how high on an average is the pile of dirt placed on his land as a result of the excavation?" Mr. Carmouche says, "I wouldn't be able to say but I think some places 10 feet or 12 feet, probably more or less."

Whilst this evidence gives us some idea about the height of the embankment on plaintiff's property, it does not inform us as to its width, which is the dimension we are most interested in for the purpose of ascertaining the quantity of land taken.

In the present state of the record, therefore, we are in no position to fix with any degree of certainty the value of plaintiff's land which was used by the defendant in widening and deepening this canal. It may be that plaintiff can present proper proof on this question, in which event, he would be entitled to recover. We deem it proper, under the circumstances, to render a judgment of nonsuit.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment of the lower court be, and the same is hereby, avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein, dismissing plaintiff's demands as in case of nonsuit; he to pay all costs.

ELLIOTT, J. (dissenting).

I think the case should be reopened and remanded to the district court in order that all doubts as to quantity land taken may be computed.

The opinion agrees in substance that plaintiff is entitled to compensation for the amount of land beyond the amount occupied by the old ditch that was already taken.

The suit should therefore be not dismissed. To the extent stated I dissent.