JANVIER, Judge.
Bonnabel Land Company, Inc., seeks by mandamus to compel the erasure from the records of the Clerk of Court and Ex-Officio Recorder of Mortgages and Register of Conveyances for the Parish of Jefferson of two inscriptions which appear in the conveyance records of that parish, one in Book 264, at folio 68, and the other in Book 265, at folio 201, both of which inscriptions are made to appear on a conveyance certificate which was applied for by the relator and both affect a large number of lots of real estate owned by the relator and which, according to the allegations of the petition, constitute clouds on the titles of the said lots and prevent the relator from readily disposing of any of the said property.
*748 The inscription in Conveyance Book -26.5 was made'on January 14, 1949, and while the notation on the conveyance certificate does not show at what time the inscription" which appears in Conveyance Book 264 was made, it obviously was made before that, which appears in Conveyance Book 265. The inscriptions were made by the 'Clerk of Court and Ex-Officio Register of Conveyances at the request of the Board of Com: missioners of the Fourth Jefferson Drainage. District and result from the filing in. the office of the said Clerk of certain resolutions adopted by the said Board of Commissioners of the said Drainage District. On the conveyance certificate which was obtained by the relator the notation of these inscriptions appears as follows:
“Servitude and/or easement and/or right of way to Board of Commissioners of the 4th Jefferson Drainage District 2/14/49 registered in C.O.B. 265 folio 201 (lots 100 thru 106, lots 1A thru 6B Sq. 83; Lots 1A thru 7B-30A-, 30B-Sq. 84; strip along Bonnabel Canal being residue of Squares 5-18-19-32-33-46-47-60-61-75-76-85 & 86 after canal was dug.
“Servitude and/or easement and/or right of way to Board of Commissioners of 4th Jefferson Drainage District (lots 4A-4B-8A-8B-Sq. 32; all Sq. 46; Lots 1A thru 15A-15B, Sq. 47; lots 4A thru 15B Sq. 60; all Square 61; all Square 74; lots 2A thru 14B Square 75; all Square 85; Squares 5 — 18—19— 32-46-47-60-61-75-33-85-86-92 registered in C.O.B. 264 folio 68.”
The relator, making defendants both the said Board of Commissioners of the Fourth Jefferson Drainage District and the Clerk of Court and Ex-Officio Register of Conveyances, alleges that the said inscriptions are illegal and should be erased, and prays that an alternative writ of mandamus issue ordering the said erasure.
The respondents, admitting that the said inscriptions appear on the conveyance records, aver that there is legal justification for them, and the respondent,. Fourth Jefferson Drainage District, by exception of no right of action and no cause of action, asserts that the suit of the relator should be dismissed for the reason that mandamus is not the proper way in which the remedy sought by relator should be obtained.
The exception of the Drainage District was referred to the merits, and, after a trial on the merits, there was judgment dismissing the suit, the trial Judge expressing the opinion that “mandamus is not the proper proceeding.” The matter is now before us on appeal by relator.
The exception of no right or cause of action filed by the Drainage District is based on the, theory that there was discretion in the Board of Commissioners of the Drainage District to require or not to require the registration of the inscriptions referred. to, and since the decision whether the resolutions should be inscribed involved the exercise of discretion on its part, mandamus will not lie to compel the erasure of the inscriptions.
It is, of course, well settled that mandamus will not lie to compel the performance of an act where there is discretion in the defendant to act or not to act; in other words, if a public official has discretion to perform or not to perform a certain act, he may not be compelled by mandamus to perform the act. We do not think that that principle has the slightest application here. If there was no authority in law for the registration of the inscriptions, then there was no authority in the Drainage District to require that the Clerk enter the inscriptions on the conveyance records. The question then is -whether there was legal authority for requiring the clerk to enter the said inscriptions, and that is the question which is presented on the merits and is not raised by the exception of no right or cause of action.
Mandamus is the proper remedy in such situation we have no doubt at all. In State ex rel. Macheca v. Dunn, Recorder of Mortgages, 148 La. 460, 474, 87 So. 236, 241, the Supreme Court said:
“It. is well settled that mandamus is the proper 'remedy for compelling the *749 recorder to cancel an illegal or unauthorized inscription purporting to operate as a mortgage: Savage v. Holmes, 15 La.Ann. 334; State ex rel. Deblieux v. Recorder [of Mortgages], 25 La.Ann. 61; Lanaux v. Recorder of Mortgages, 36 La.Ann. 974; State ex rel. Busha’s Heirs v. Register [of Conveyances], 113 La. [93] 98, 36 So. 900.”
See, also State ex rel. Metropolitan Land Co. v. Recorder of Mortgages, 166 La. 271, 117 So. 145; Cappel v. Hundley, 168 La. 15, 121 So. 176; State ex rel. Ernest Realty Co., Inc., v. Moore, Blane & Merklein, Inc., 183 La. 927, 165 So. 147.
It is conceded by the respondents that the inscriptions referred to do appear on the records and that they were made as the result of resolutions adopted by the Board of Commissioners of the said Drainage District, and it is contended that the said inscriptions were authorized by Act 61 of 1904. The provisions of this statute now appear in Title 38, section 113 of the LSA-Revised Statutes of 1950. At the. time the inscriptions were made the original act, No. 61 of 1904, was effective, and we therefore quote provisions óf that statute which are relied on by the relators.
“Be it enacted by the General Assembly of 'the State of Louisiana, That the various Levee and Drainage Districts of this State shall have ' control over all public Drainage Channels within the limits of their respective Districts and for ,a space of one hundred feet on each side thereof, * * * and shall have authority to adopt rules and regulations for preserving the efficiency of said Drainage Channels.”
Respondents contend that, as a result of this statute, any drainage district within the contemplation of the statute is authorized to require by resolutions that its rights be protected by registration in the conveyance records of its “servitude and/or easement and/or right of way,” and'that that is all that it has required here; in other words, that all that has been placed of record by these inscriptions is the right given by the statute of 1904.- •’
Relator, on the other hand, maintains that, there is given to such Drainage District no. such right to require such inscriptions in the conveyance 'records of any parish, and that, as a matter of fact, such registrations in 'the conveyance records and the report-of any such registrations on -conveyance certificates are implicitly prohibited by Act 85 of 1921, which was also in force at the time these inscriptions were made and which now appears in LSA-Revised Statutes of 1950 in Title 38, section 1615. The provisions of said act of 1921 upon which the relator relies appear in section 13 as. follows :
“It is hereby made the duty of the Clerk of the District Court and Ex-Officio .Recorder of every Parish of this State to keep among the records of his office a well-bound book, which, shall be known as the ‘Drainage District Record Book,’ in which shall be recorded,-’with-the date of recording set' forth, all proceedings- and matters pertaining to Drainage Districts by this Act required to be recorded. It is heréby made the duty of the said Clerks' of Court and Recorders to make and keep a proper index of the matters recorded in said Drainage District Rec-' ord Book as the same may be recorded.
******
“No matter or thing recorded in said ‘Drainage District Record Book’ according to the provisions of this Act, shall be reported by the Clerk of-Court and Recorder on any mortgage or conveyance certificate issued by him.”
Counsel for respondents, conceding that, as a result of the above-quoted provisions of Section 13 of the statute of 1921, which appear practically verbatim in LSA-R.S, 38:1615, there should be a Drainage District Record Book and that these resolutions should have been recorded in that book, contend that there -is nothing in the statute nor elsewhere which prohibits the registration of such inscriptions in the conveyance : records also, and that there is nothing which prohibits the ■ showing on *750 any conveyance certificate of such inscriptions as appear on the conveyance records.
We find ourselves unable to agree that such inscriptions may be made in both the regular conveyance records and in the Drainage District Record Book. It seems to us that a requirement that a Drainage District Record Book be kept was adopted for the purpose of avoiding the very result which has followed the inscriptions which were made here in the conveyance records and which are shown on the conveyance certificate.
Counsel, referring to Act 85 of 1921, say that
“the act did not prohibit, either expressly or by implication, the recordation of a resolution, such as the resolutions complained of herein, in the conveyance records.”
With this, as we have said, we find ourselves unable to agree. If the resolutions of the Drainage District, which are registered in the conveyance records, should have been recorded in a special Drainage District Book, surely it follows that this registration should not have been reported on the conveyance certificate for, as we have already shown, nothing recorded in that book should be shown on a conveyance certificate.
Surely it cannot be successfully argued that this prohibition could be circumvented by merely registering an inscription also in the conveyance records and then making the notation on the conveyance certificate as the inscription appears in the conveyance records and contending that, since the notation on the certificate is made from the conveyance records and not from the special Drainage District Record Book, there is no violation of the prohibition which appears in the statute of 1921.
All that was intended to be given to such Drainage District by Act 61 of 1904 was the right to make certain that nothing should be permitted to interfere with the efficiency of such channel or canals as might form a part of the Drainage District.
In Scott v. Red River-Bayou Pierre Levee & Drainage Dist., 7 So.2d 429, 432, the Court of Appeal for the Second Circuit said:
“It is our opinion the control vested in the drainage District by said Act has reference only to maintaining the efficiency of the canal after it has been constructed' and does not vest ownership of the strip of land in the drainage District. * * * ”
The Court of Appeal for the First Circuit, in Martin v. Gravity Drainage Dist. No. 14, 143 So. 93, 94, said:
“Defendant’s pretended control over plaintiff’s property is based on the provisions of Act No. 61 of 1904. We have examined that statute, and find that it gives to levee and drainage districts in this state control over all public drainage channels, within the limits of their respective districts, and for a space of one hundred feet on each side thereof. Section 2 of the act, which prescribes a penalty for violation of the regulations prescribed by the district, shows clearly that the control so vested has reference only to maintaining the efficiency of the canal after it has been constructed, and cannot in any way be construed as taking away from the property owner his right to recover the value of his property used in constructing it.”
It was not intended that such a Drainage District might seriously interfere with the merchantability of title to real estate by registering such encumbrances as would seem to result from the inscriptions which are complained of here.
Counsel for respondents argue that relator cannot be heard to rely on the pro^ visions of the statute of 1921, which requires that such inscriptions be entered in the special Drainage District Record Book, because in the petition the act of 1921 was not specially referred to. We think that no such reference was necessary and that all that the relator was required to allege was that the inscriptions in the conveyance rec *751 ords were illegal. Surely it is not necessary that a statute of the State be especially pleaded in order that a party who relies on the provisions of that statute may be protected thereby.
Counsel for respondents further contend that, if relator is correct in stating that all such resolutions or other actions of the Drainage District should be recorded only in the special book, then the Drainage District may not register in the conveyance office any acquisitions which it may acquire by convention.
We do not think that this necessarily follows. If a Drainage District acquires property or rights by convention, surely it may register those acquisitions in the conveyance records and necessarily those acquisitions would be properly shown on any conveyance certificate. Section 13 of Act £5 of 1921 was inserted merely to prevent the registration in the conveyance records ■of such rights as are claimed to result from the provisions of the Act of 1904.
Counsel for respondents further argue that if such rights may not be registered in the conveyance records, then unwary purchasers of land which is in a drainage district and which may be wholly •or partially located within 100 feet of such channels, may be unaware of the rights of the Drainage District. The answer to this argument is that prospective purchasers may, by title examination, learn of such recordation of any such resolutions in the special Drainage District Record Book. While such purchasers might be actually unaware of the law on the subject, they are presumed to know that, as a result of the 1904 act, such Drainage Districts have the right to see to it that nothing interferes with the operation of such drainage channels or canals. Everyone is presumed to know the law.
Our conclusion is that the registrations complained of were illegally made and that the inscriptions thereof should be erased from the conveyance records of the Parish of Jefferson.
The question of the payment of costs is an interesting one. See LSA-R.S. 13:-4521, Gulf Shipside Storage Corporation v. Thames, 217 La. 128, 46 So.2d 62; Tuggle v. Police Jury of Webster Parish, La.App., 66 So.2d 414; McCrary v. Police Jury of Caddo Parish, La.App., 66 So.2d 416; McGee v. Police Jury of Caddo Parish, La.App., 66 So.2d 408; Goodwin v. Department of Highways, La.App., 53 So.2d 161; see, also, Opinions of Attorney General, 1940-42, p. 1887.
Accordingly, the judgment appealed from is annulled, avoided and reversed and the writ of mandamus is now made peremptory hereby commanding the Clerk of Court and Ex-Officio Recorder of Mortgages and Register of Conveyances for the Parish of Jefferson to cancel and erase from the records of the Conveyance Office of Jefferson Parish the inscriptions complained of, one in C.O.B. 264, folio 68, and the other in C.O.B. 265, folio 201, plaintiff to pay all of its own costs, defendant, Board of Commissioners of the Fourth Jefferson Drainage District, to pay costs of stenographer.
Writ of mandamus made peremptory.