229 So.2d 139 (1969)
Sam B. GRAYSON et al., Plaintiffs-Appellants,
v.
COMMISSIONERS OF BOSSIER LEVEE DISTRICT of Louisiana, Defendant-Appellee.
No. 11304.
Court of Appeal of Louisiana, Second Circuit.
November 18, 1969.
Rehearing Denied January 6, 1970.
*140 Cook, Clark, Egan, Yancey & King, by Frank M. Cook, Shreveport, for plaintiffs-appellants.
Watson, Brittain & Murchison, Natchitoches, Billy Ross Robinson, Bossier City, for defendant-appellee.
*141 Before AYRES, BOLIN and DIXON, JJ.
DIXON, Judge.
This contest between landowners and a levee board involves land in Section 24, Township 17 North, Range 13 West, Bossier Parish, Louisiana. The defendant levee board undertook to improve Macks Bayou, part of which traversed a portion of plaintiffs' lands. Plaintiffs also owned land in the adjoining Section 23.
The suit began as a possessory action by plaintiffs, who alleged that the defendant levee district, without any authority or right, entered plaintiffs' property, cut trees, deposited trunks and limbs on plaintiffs' pasture and excavated and otherwise damaged plaintiffs' lands. An amended petition alleged that the defendant continued its invasion of plaintiffs' property, excavated a deep ditch through the property and deposited the soil on the pasture. Plaintiffs' principal claim for damage was for the destruction of forty-one pecan trees valued by plaintiffs at $18,400.24. Plaintiffs claimed other damages to the pasture and land adjacent to the ditch.
Defendant answered, claiming that in the regular course of its duties, it enlarged Macks Bayou, and that all work done was within a space of one hundred feet on each side of the channel of Macks Bayou "all in accordance with the provisions of R.S. 38:113," and was not liable for any damages to the plaintiffs.
On the trial of the case, some evidence was adduced to establish that the work done by the defendant was done for "levee drainage purposes." Plaintiffs introduced evidence to show that the drainage work was primarily for the purpose of draining nearby land which was being subdivided for sale to the public.
The trial court gave judgment to plaintiffs for $2,250.00, which apparently represented one-half of the sum found to be the market value of nine acres occupied by the defendant in performing the work complained of.
Plaintiffs appealed complaining of an inadequate award by the district court. Plaintiffs specified as error the holdings of the district court that there could be no additional recovery for the destruction of the pecan trees, and that nine acres of plaintiffs' land was damaged, instead of 15.59 acres, as contended by the plaintiffs.
Plaintiffs' position is that under the authority of State Department of Highways v. Williams, La.App., 210 So.2d 616 (1968) and Humble Pipe Line Company v. Wm. T. Burton Industries, Inc., 253 La. 166, 217 So. 2d 188 (1968), the provisions of R.S. 48:218 require compensation for the destruction of pecan trees (R.S. 48:218 requires compensation for crops and improvements; the Williams case held that grafted pecan trees in a commercial orchard were "crops;" the Burton case held that, even though R.S. 48:218 refers by its terms only to expropriation for highway purposes, it should be applied when private land is expropriated by a pipe line company).
The defendant answered the appeal. There is a motion to dismiss the answer as not having been timely filed. The answer to the appeal was not filed within fifteen (15) days of the date on which the record was first lodged, pursuant to the requirements of Civil Code of Procedure Article 2133. The answer to the appeal, however, was filed within fifteen (15) days from the date on which an additional portion of the record, having been omitted from the record when originally lodged, was filed with the clerk of the court of appeal. We find it unnecessary to decide the motion to dismiss, in view of our decision which is adverse to the contentions of the defendant.
Defendant prays that the award of the district court be reduced, contending that, if any compensation is due to the plaintiffs, it is limited by Article 16, Section 6 of the Constitution of 1921 to the assessed value of the property taken. Defendant contends that the decision of the district *142 court is in direct conflict with R.S. 38:113 and Scott v. Red River-Bayou Pierre Levee and Drainage District, La.App., 7 So.2d 429 (1942). (Defendant reads the Scott case as holding that R.S. 38:113 creates "an additional servitude, exclusive of Article 665"). The defendant further argues that Jeanerette Lumber & Shingle Company, Ltd. v. Board of Commissioners for the Atchafalaya Basin Levee District, 249 La. 508, 187 So.2d 715 (1966) is inappropriate to the case before us for the reason that it was concerned with levee construction, and not "the improvement of a drainage channel." We think Jeanerette is applicable; Article 16, Section 6 of the Constitution applies to lands taken for levees and "levee drainage purposes," which the levee board claims was the object of the work in the case before us.
In attempting to maintain their respective positions, the defendant claims that the plaintiffs' land was riparian. The plaintiffs contend that the land here involved was not riparian when it was separated from the sovereign.
The Jeanerette case is the latest expression of the Louisiana Supreme Court in its interpretation of Article 16, Section 6 of the Constitution. Jeanerette followed Delaune et ux. v. Board of Commissioners for the Pontchartrain Levee District, 230 La. 117, 87 So.2d 749 (1956) and Board of Commissioners for the Pontchartrain Levee District v. Baron, 236 La. 846, 109 So.2d 441 (1959). It is firmly established that Article 16, Section 6 limiting the compensation to be paid for land used for levees or levee drainage purposes to the assessed value applies only to lands subject to the riparian servitude established by Article 665 of the Civil Code, and that in order to be subject to the servitude, the land involved (1) must have been a part of a tract of land actually fronting on a navigable river at the time when the tract was first separated from the sovereign and (2) must be within the range of the reasonable necessities of the situation. The Baron case indicates that the appropriating body, and not the landowner, "bear the burden of proving the riparian connection of the land as a prerequisite to establishing its right to take." 40 Tulane Law Review, 233, 264. Further, A. K. Roy, Inc. v. Board of Commissioners for the Pontchartrain Levee District, 237 La. 541, 111 So.2d 765, has added the requirement that, in order to be subject to the servitude, the land taken must be necessary to the levee and flood control system on the river to which it is riparian, and not merely necessary to the flood control system in general.
Defendant argues that, since a portion of plaintiffs' property lies in Section 23, and since Section 23 is adjacent to the present course of Red River, the land involved is riparian.
The argument lacks validity, for the reason that the work done by the defendant, of which the plaintiffs complain, lies entirely within Section 24. Although the Graysons own land, which is in another section, it is not the present ownership of the land that determines its riparian character, but its situation at the time when it was first separated from the sovereign. The fact that a man may own land on the river does not make all the land he owns riparian in nature.
Section 24 was a portion of the swamplands grants selected by the State of Louisiana in 1853; it was separated from the public domain when it was purchased by plaintiffs' ancestors in title in 1857 and 1860. Section 23 lay between Section 24 and Red River. Section 23 had been separated from the state by sale to private owners in 1840. The land in Section 24 does not meet the test required for the application of the Constitutional Article 16, Section 6 and the Civil Code Article 665. It was not riparian in character when separated from the public domain.
The defendant levee board contends that R.S. 38:113 as interpreted by the Scott case *143 gives it a servitude over the land involved. R.S. 38:113 provides:
"Control of drainage channels in levee and drainage districts
"The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels."
The defendant is under a misapprehension as to the holding of the Scott case. That case treated Act 61 of 1904 (R.S. 38:113) as limiting the control that levee districts and drainage districts have over certain channels, and did not hold that an additional servitude had been created for drainage purposes. The court quoted a portion of the district court's opinion at 7 So. 2d 430:
"`The Legislature by Act 61 of 1904 has limited the police power to 100 feet on each side of a natural drain.
"`Therefore, as we read the various laws and constitutional provisions, we are of the opinion that with respect to natural drains, a levee board may improve same within 100 feet of the natural drain, and * * * the Board must pay * * * at not exceeding the assessed value, and when the Board passes beyond the 100 feet * * * then the Board must expropriate such additional property and pay for same at its actual cash value.'"
The court in the Scott case continued at page 432:
"It is our opinion that the control vested in the drainage district by said Act has reference only to maintaining the efficiency of the canal after it has been constructed and does not vest ownership of the strip of land in the drainage District. That is also the opinion of the Orleans Circuit Court of Appeal as in the case of Martin * * *."
The Martin case referred to was Martin v. Gravity Drainage District No. 14, La. App., 143 So. 93. The Martin case did not interpret Act 61 of 1904 (R.S. 38:113) as creating a servitude. The court said at page 94:
"Defendant's pretended control over plaintiff's property is based on the provisions of Act No. 61 of 1904. We have examined that statute, and find that it gives to levee and drainage districts in this state control over all public drainage channels, within the limits of their respective districts, and for a space of one hundred feet on each side thereof. Section 2 of the act, which prescribes a penalty for violation of the regulations prescribed by the district, shows clearly that the control so vested has reference only to maintaining the efficiency of the canal after it has been constructed, and cannot in any way be construed as taking away from the property owner his right to recover the value of his property used in constructing it." (Emphasis added).
See also State ex rel. Bonnabel Land Company, Inc. v. Board of Commissioners of Fourth Jefferson Drainage District, La. App., 69 So.2d 747 (1954), where the Martin case and Scott case were approved, and where the court ordered the removal of an inscription of "servitude" from the conveyance records.
In the Scott case the plaintiff did not pursue on appeal her claim for the market value of the land taken. The Court of Appeal, therefore, was not required to decide whether there was a constitutional "appropriation" under Article 16, Section 6, and affirmed the award of the district court.
Board of Commissioners of Tensas Basin Levee District v. Franklin, 219 La. 859, 54 *144 So.2d 125 (1951) also involved an interpretation of Act 61 of 1904, the first section of which is found in R.S. 38:113. The Franklin case is said to have sanctioned the greatest geographical extension of appropriating powers to the levee board. (40 Tulane Law Review, 233, 263). The property involved in the Franklin case lay seventeen miles from a navigable stream. The defendant landowner in the Franklin case argued that R.S. 38:113 did not give the levee board the power of an appropriation. The court relied on the federal case of Wolfe v. Hurley, D.C., 46 F.2d 515, and squarely held that Civil Code Article 665, when construed with R.S. 38:113 and R.S. 38:281, gave the levee board ample authority to appropriate this property, and that the levee board's decision that the property was "within range of the reasonable necessity of the situation, as produced by the forces of nature, unaided by artificial causes" was a question of fact which would not be upset by the court in the absence of a showing of an abuse of discretion.
Wolfe and Franklin no longer furnish an accurate expression of the law concerning the levee boards' power of appropriation. They were "distinguished" in Delaune, supra, but compared with the case of Hebert v. T. L. James & Company, 224 La. 498, 70 So.2d 102 (1953) "where the court gave Article 665 of the Civil Code a restrictive interpretation when applied to a servitude for road purposes." (87 So.2d 749, 754, footnote 5). The court continued its discussion of the Wolfe and Franklin cases, and treated them as providing the second requirement for the exercise of the power of appropriation for levee purposes (whether property taken is within range of the reasonable necessities of the situation), the first test having been held to be the riparian nature of the property taken at the time of its severance from the public domain.
The reference to Hebert v. T. L. James & Company in the Delaune case was indicative of the ruling of the Supreme Court that was to follow in Jeanerette. There the court said as 187 So.2d 715, 717:
"This court's language of approval of such doctrine (that under certain circumstances land wherever located may be subject to appropriation as owing a servitude for levee purposes) in the Franklin case, supra, appears to be dicta * * *." (Parenthetical matter added).
The court further said in Jeanerette at 187 So.2d 715, 717:
"Too, approval of the rationale of Wolfe v. Hurley, supra, seemingly has been negatived by the Delaune decision, and by our holding in Board of Commissioners for the Pontchartrain Levee District v. Baron, 236 La. 846, 109 So.2d 441."
We cannot escape the conclusion that the Louisiana Supreme Court has restricted the application of Article 16, Section 6 to cases in which there is a riparian servitude, and that they would not again reach the same conclusions that they did in the Franklin case when confronted with the argument that R.S. 38:113 does not grant a levee board any additional right to appropriate property without the payment of just compensation. R.S. 38:113 is by its terms limited to control over "public drainage channels," and is, no doubt, statutory authority for expropriation of an area up to one hundred feet on each side of the channel in certain cases. But unless Article 16, Section 6 of the Constitution of 1921 applies, that same Constitution prevents the taking of private property without just and adequate compensation (Article 1, Section 2, Constitution of 1921).
Since there was no expropriation, and since defendant does not have the right of appropriation, plaintiffs are entitled to recover for damages incurred by defendant's acts.
Plaintiff's claim for damages in the original petition was limited to compensation for the destruction of pecan trees and damage to pasture. In the supplemental petition, *145 plaintiffs added a claim for costs incurred in spreading spoil dirt, damage to property caused by "severance of twenty acres of land by impassable ditch," and damage to property caused by caving and erosion of unstable banks of the ditch cut by defendant.
Macks Bayou was not a water filled stream prior to the drainage work complained of by plaintiffs. The record shows that it was a slight depression with gentle sloping banks, at least in part, that could be mowed with a lawn mower. Some pecan trees grew on the sloping banks and some were in the middle of the bed of this depression through plaintiffs' property. The record also illustrates that the drainage work amounted to the digging out of a ditch several feet wide and several feet deep with relatively steep banks.
The $2,250.00 awarded plaintiffs by the trial court was apparently computed on the supposition that the defendant had taken a servitude from the plaintiffs over nine acres of land worth about $500.00 an acre.
There is evidence in the record to indicate that about nine acres of plaintiffs' land had been damaged. There is also evidence in the record to indicate that the new drainage benefited plaintiffs' land. The plaintiffs use the land for pasturing cattle, and the ditch dug by the defendant prevents the cattle from freely crossing back and forth across the bayou. There is no evidence in the record, however, on which we can base an award for damages for this division of plaintiffs' farm.
Nor is there any evidence in the record on which we can base a finding of damages for erosion of the banks of the ditch. It is true that the record does support plaintiffs' contention that Macks Bayou and its banks were a part of a coastal Bermuda pasture and that the bayou and the spoil spread at a depth of about two feet adjacent to the banks of the ditch destroyed a certain area of the pasture. However, the record is devoid of evidence on which we could compute plaintiffs' damages for the loss of a portion of their coastal Bermuda grass pasture.
There is ample evidence in the record however to support plaintiffs' principal claimthe destruction of forty-one pecan trees. One expert witness used a formula he claims is common for the computation of the value of shade trees. This formula is inappropriate. The trees destroyed in the instant case were a part of a pecan orchard, and were not shade or ornamental stock.
Another expert arrived at a value of $300.00 apiece for each pecan tree taken. He was a horticulturist and operated pecan orchards. He substantiated plaintiffs' claim that forty-one trees ranging in size from eighteen to thirty-two inches in diameter had been taken. The value for each tree was established on the basis of computing the average yield per acre for a pecan orchard (800 pounds), the average number of trees per acre (10), the average price per pound (25¢) for an average productive life of a tree (30 years) with about half of the gross income going for production expenses. This evidence was largely uncontradicted except for the fact that the witness apparently did not take into consideration a peculiarity of pecan orchards to which both he and the plaintiffs testified: pecan orchards do not produce good crops every year; some years they do not bear. The witnesses testified that a pecan orchard is barren almost half the years of its life.
If we apply this additional variable to the formula for determining the value of pecan trees destroyed, we reach the figure of $150.00 a tree, and find that the plaintiffs are entitled to recover $6,150.00 for the destruction of pecan trees by the defendant.
Plaintiffs also testified without contradiction that they spent $1,400.00 for spreading spoil dirt which the contractor would not spread, in order to minimize *146 damages to their farm, and $45.00 for salvaging culvert pipe removed by the contractor. Plaintiffs are also entitled to recover for these amounts expended. Therefore, the judgment of the district court is amended and affirmed, and there is now judgment in favor of plaintiffs and against the defendant in the amount of $7,595.00, with legal interest from date of demand until paid, and for all costs.
There is further judgment herein in favor of plaintiffs, Sam B. Grayson and Mrs. Velma Davis Grayson, and against the defendant, Board of Commissioners of the Bossier Levee District, recognizing plaintiffs' right to the possession of the following described property:
Starting at a concrete monument at the quarter section corner between Sections 23 and 24, Township 17 North, Range 13 West, Bossier Parish, Louisiana, for a point of beginning, run thence north 9 degrees 44 minutes west 2369 feet to public road; thence up said road north 84 degrees 35 minutes east 558 feet; thence south 13 degrees 48 minutes east 331.5 feet; thence north 84 degrees 35 minutes east 132 feet; thence south 13 degrees 48 minutes east 2139.8 feet; thence west 876 feet to the point of beginning, containing 41.84 acres, more or less, the said property being in Sections 23 and 24, Township 17 North, Range 13 West, Bossier Parish, Louisiana, as per map recorded in Volume 80, page 629 of the Conveyance Records of Bossier Parish, Louisiana;
A certain tract of land containing 93.20 acres, more or less, in Sections 13 and 24, Township 17 North, Range 13 West, Bossier Parish, Louisiana, more particularly described as follows: BEGINNING at a point on the east and west center line of Section 24, this point being 528 feet west from the center of Section 24, thence north 567 feet to the edge of the east high bank of bayou; thence along the edge of this bayou high bank, north 41 degrees 08 minutes west 53.7 feet; thence north 19 degrees 50 minutes west 182.3 feet; thence north 14 degrees 07 minutes west 195 feet; thence north 23 degrees 08 minutes west 101.2 feet; thence north 8 degrees 35 minutes west 106.6 feet; thence north 13 degrees 10 minutes east 328.6 feet; thence north 9 degrees 05 minutes east 165.5 feet; thence north 5 degrees 35 minutes west 104.7 feet; thence north 23 degrees 25 minutes east 36.6 feet; thence north 61 degrees 08 minutes east 116.4 feet; thence north 25 degrees 15 minutes east 167.4 feet; thence north 40 degrees 53 minutes east 118 feet; thence north 49 degrees 05 minutes east 68.4 feet; thence north 47 degrees 45 minutes west 34.5 feet to the center of this bayou; thence along the center of this bayou north 20 degrees 40 minutes east 84.6 feet; thence north 14 degrees 40 minutes west 195.8 feet; thence north 10 degrees 10 minutes east 84.5 feet; thence north 33 degrees 15 minutes east 171.5 feet to the intersection with the west right of way line of the Shreveport-Coushatta paved highway; thence north 33 degrees 03 minutes west 165.5 feet along this west line of Shreveport-Coushatta highway to the intersection with the south right of way line of gravel road; thence south 79 degrees 30 minutes west 2054 feet along the south line of said gravel road; thence south 84 degrees 35 minutes west 132 feet along the south line of said gravel road; thence south 13 degrees 48 minutes east 331.5 feet; thence north 84 degrees 35 minutes east 132 feet; thence south 13 degrees 48 minutes east 2139.8 feet to the east and west center line of Section 24; thence east along this line 1261 feet to the point of beginning. As per map prepared by H. L. Mitchell, Civil Engineer, recorded in the Conveyance Records of Bossier Parish, Louisiana, January 25, 1932, Registry No. 11678, together with all buildings and improvements thereon;
and maintaining the plaintiffs in peaceful possession thereof, and ordering the defendant to assert any adverse claim or right *147 in and to said immovable property in an action to be filed within sixty (60) days from the day on which this judgment becomes final, or be precluded thereafter from asserting any claim or right in and to said property.