SAMUEL, Judge.
This is a suit for $4,000, the amount of a deposit defendants were obligated to make under a written contract with the plaintiffs, and for an additional $684, allegedly the amount of damages sustained by plaintiffs. The contract is an agreement to sell and purchase (plaintiffs were the vendors and defendants the vendees) a portion of undeveloped land in the City of Kenner. The suit is based on the alleged fact that the defendants refused to take title to the property without legal cause at an act of sale scheduled for December 7, 1970.
The defendants’ answer affirmatively avers they were ready, willing and able to pay the purchase price and accept title from plaintiffs, but had refuséd to do so *496 because the latter were not in a position to transfer merchantable title to them on the day of the act of sale and arbitrarily and capriciously refused to cure the title defects in spite of their promise to do so. In addition, defendants filed a reconventional demand seeking $8,000, which allegedly consists of the return of a $4,000 deposit plus a like sum as a penalty for breach of the contract.
After a trial on the merits, there was judgment dismissing both the original and the reconventional demands. Plaintiffs have prosecuted this appeal from that judgment. Defendants have neither appealed nor answered plaintiffs’ appeal. Thus, the only question before us is whether the trial court committed error in dismissing plaintiffs’ suit.
The contract was executed on August 3, 1970 between defendants as purchasers and plaintiffs as sellers. The contract provided for a purchase price of $40,000, $10,000 of which was to be paid at the act of sale with the balance payable over a 10-year period secured by a mortgage in favor of plaintiffs. The agreement further provided that the purchasers would pay up to the sum of $40,000 of existing liens, with the sellers to pay any excess over that sum. The passing of the sale originally was scheduled for December 1, 1970, but was rescheduled for December 7, 1970.
It was agreed the sale was to be confect-ed by the sellers’ notary. In this connection, the testimony reveals the sellers’ notary insisted that he render a title opinion instead of furnishing title insurance as the purchasers apparently had requested. In any event, on the scheduled day the purchasers made timely appearance at the notary’s office in order to perfect the act.
On that occasion, for the first time the purchasers were informed of the fact that a drainage servitude in favor of a Drainage District, which apparently affected the property, was recorded in the conveyance records of Jefferson Parish. In the act of sale to be executed the notary had placed a clause exculpating himself from any liability because of the existence of the servitude. When questioned about its nature and extent, he stated he had no knowledge of the servitude whatever and it is clear he had taken no action to establish the nature of the servitude, its extent, or the procedure by which it could be cancelled, if such cancellation was possible.
In addition, certificates indicated outstanding liens in the amount of $38,000. The notary had assured purchasers’ attorney he would present suitable evidence to show the precise payoff figure needed to cancel these liens. However, when the parties met to pass the act he did not have the necessary information to determine that precise figure and apparently made no attempt to escrow any money in order to cover any possible surplus over the $40,000 contractual limit which the purchasers had established for assumption of liability to satisfy the liens. It should be noted that the certificates provided by the notary did not include interest on the liens to the date of the act of sale, nor was there any evidence to indicate whether a prepayment penalty would be exacted by the taxing authority.
During the course of extensive discussions between the parties in his office, the notary obtained a commitment by telephone from a title insurance company to insure the title to the property without making an exception for the drainage servitude. The purchasers declined this offer in lieu of more definite information on the nature of the servitude since the title insurance policy would only cover them to $40,000, and would in no way indemnify them for any damage they might sustain by virtue of the existence of the servitude after erecting improvements on the property, thereby increasing its value and subsequent sale price.
Slightly more than a month after December 7, 1970, in spite of the apparent agreement to cooperate in resolving the apparent title problems and in spite of the *497 deposit, plaintiffs sold the property to third persons for the sum of $43,000.
The figure presented by the sellers’ notary at the act of sale ultimtaely was determined to be the correct payoff balance of the liens as of that date. In addition, it was later determined that the servitude in question was a conventional one and the Parish of Jefferson would have recommended its cancellation since it was no longer needed.
Counsel for plaintiffs argues the facts contained in the last preceding paragraph establish the merchantability of the title to the property on December 7, 1970, the date the act was to be passed, and that the defendants were in default for refusing to take title on that date. The defendants contend they were justified in refusing to take title on the date the act was to be passed because at that time they were reasonably in doubt about the merchantability of the title due to the servitude and also in doubt regarding the exact amount of the liens due on the property. Defendants also argue they were never placed in default. We affirm the trial court judgment.
There is some contradiction in the testimony with regard to whether the purchasers were placed in default for not signing the act of sale. The attorney for the prospective purchasers testified it was his understanding from his discussion with the notary that they would both investigate the question of the nature of the servitude and the precise payoff figure for the liens so that the sale could be completed at a later date. His testimony is corroborated by the fact that on that day all parties agreed to place the $4,000 deposit in an informal form of escrow by executing a check payable jointly to the notary and the purchasers’ attorney pending resolution of the apparent problems. In any event, the only opportunity afforded defendants to take title was on December 7, 1970 when the parties met for the purpose of passing the act and our conclusion regarding the servitude and the liens makes unnecessary any further consideration of the question of default.
Much is made of the distinction between general drainage servitudes in favor of a parish or drainage district and a conventional servitude, like the one in question, granted pursuant to LSA-C.C. Art. 709. Without going into detail, it is argued that a general drainage servitude does not have the legal effect of interfering with the merchantability of title to real estate.[1] The legal merchantability of the title on the date of the act of sale is immaterial in the case now before the court for the reason that the sellers’ notary, who rendered a title opinion on the property, not only included a self-serving exculpatory clause in the act of sale absolving him from any liability by virtue of the existence of the servitude in question, but readily admitted he was unfamiliar with the nature and extent of the servitude since he had not examined the inscription thereof in the conveyance records. Consequently, he was not in a position on the day of the act of sale to either render a title opinion or to advise the purchasers that the servitude was not of a nature to affect the merchantability of the title to the property. The sellers warranted a merchantable title, but their own notary could neither pass a title opinion nor assure purchasers at the act of sale that a servitude from which he exculpated himself in the act of sale would not affect merchantability. Since neither the purchasers nor their attorney had been placed on notice of the existence of the servitude prior to the act of sale, it was not possible for them to make their own examination with regard to its legal effect. Because they were uninformed as to the extent of the servitude or its actual effect on the merchantability of the title on December 7, 1970, it was not *498 unreasonable for them to refuse to take title at that time.
Little was done by the notary to clarify the situation after December 7, 1970, and the property was sold by sellers to third persons on January 13, 1971 for a price $3,000 more than the defendants had agreed to pay. In this way the sellers made it impossible for purchasers to comply with their agreement to take title after investigating the apparent title defect in accordance with their mutual agreement. Hence, the purchasers were not in default and they were effectively prevented from complying with their contract by the subsequent actions of the sellers.
As we are of the opinion the objection relative to the servitude alone was sufficient justification for defendants’ refusal to take title, a consideration of the objection relative to the liens is unnecessary.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. See Grayson v. Commissioners of Bossier Levee District, La.App., 229 So.2d 139; State v. Board of Com’rs of Fourth Jefferson D. Dist., La.App., 69 So.2d 747; Martin v. Gravity Drainage Dist. No. 14, La.App., 143 So. 93.