DOMENGEAUX, Judge.
In mid-1970, Atchafalaya Workover Contractors, Inc., a corporation domiciled in Lafayette, Louisiana, and defendant herein, who was engaged in furnishing rigs to the oil and gas industry for “workover” work on previously drilled wells, desired a loan in the amount of $1,600,000.00. In pursuit of that goal David G. Williams, President of Atchafalaya, and likewise a defendant herein, contacted a loan broker, Harris B. Pitre, of Houma, Louisiana, who was the sole shareholder in a corporation known as Allstate Marine and Investment Services, Inc. It was agreed in writing, that should Pitre be successful in obtaining the loan, Atchafalaya would pay Allstate a five percent commission on the full amount thereof.
Pitre met with no success for a period of several months, and around the beginning of 1971 he enlisted the aid of Seymour Flax, plaintiff herein, introducing him to David Williams. Flax, who was also a loan broker, agreed to seek out a lending source, and if successful to receive fifty percent of Pitre’s commission as his fee. He was no more successful than Pitre, however, and he therefore brought in a third broker, Carl Williams of Chicago, Illinois.
Carl Williams demanded a five percent commission for himself, over and above-the five percent already due Pitre and Flax. Accordingly, in order to make the loan more feasible for Atchafalaya, Pitre and Flax agreed to reduce their commission to three percent. Carl Williams then made the necessary connection with the First National Bank of Chicago.
Before the bank consented to lending the desired amount of money, however, it. demanded a stock warrant for five shares of stock, which if exercised, would have given, it a ten percent ownership in Atchafalaya, together with some other, rather burdensome, conditions. This made the loan so costly that Carl Williams consented, at the request of David Williams, to a lowering of his commission from the stated five percent to three and one-half percent. David Williams also made an effort to convince Flax and Pitre to reduce their commission from three percent to one and one-half percent. The question of whether he succeeded is at the crux of this controversy.
The loan was consummated with the First National Bank of Chicago on May 25, 1971. David Williams paid a total of $24,000.00 directly to, or on behalf of Pitre and Flax, and on September 9, 1971, he obtained a full release of his obligation to the two of them from Pitre, contained in affidavit of that date. Flax, however, contended that he had never consented to a reduction of the commission to one and one- *310 half percent, and in the meantime, on June 28, 1971, he had sued Atchafalaya and David Williams for a full three percent, or $48,000.00, less payments admittedly made to him by the defendants of $6,491.54. The trial court rendered judgment on April 25, 1972, in his favor, and against Atchafalaya awarding him the sum of $17,508.46. (Evidently one and one-half percent, or $24,000.00, less the sums already paid to plaintiff by defendants, $6,491.54.) Defendants appeal to this court seeking a reversal of that judgment. Plaintiff did not answer the appeal, and asks only for an affirmance.
The reduction of the original five percent contract between Atchafalaya and Allstate, to three percent by verbal agreement of all concerned, i. e., David Williams, Pitre, and Flax, is not disputed. Everyone agrees that this reduction was made when Carl Williams entered the picture. Additionally, all of the written correspondence between the parties confirms the reduction. We are therefore concerned herein only with the alleged further reduction to one and one-half percent.
David Williams testified that after learning of the bank’s demand for a stock warrant he met with Flax and Pitre in Mexico City. There he said he spoke to Flax regarding a reduction of the commission due him and the latter agreed, though reluctantly, to reduce the commission to one and one-half percent. He is corroborated on this point by the testimony of Dick Guidry, his business partner, who stated that he spoke to Flax immediately after the latter’s meeting with David Williams, and Flax expressed his reluctant agreement to a one and one-half percent reduction.
The alleged agreement was vehemently denied by plaintiff, who testified that David Williams had indeed approached him regarding the reduction but that he had rejected the proposal. Pitre testified in a deposition given before the trial that following the meeting in Mexico, plaintiff had told him that it looked as though they would have to reduce their commission to one and one-half percent in order to consummate the deal. At trial he stated that he could not remember the words used by plaintiff on that occasion, but he indicated that plaintiff merely told him that David Williams wanted the commission reduced. On neither occasion, however, did he specifically say that plaintiff had agreed to a reduction of the commission due him to one and one-half percent.
Pitre, did, however, sign the aforementioned affidavit on September 9, 1971, wherein he stated that upon the making of the aforementioned demands by the bank, the commission due him, Allstate, and Flax was reduced to one and one-half percent, that Flax was merely the agent of Allstate and had no authority to negotiate in connection with the proposed loan except through Allstate, and that Flax had already received his share, i. e. one-half, of the one and one-half percent commission. In the affidavit he further acknowledged the receipt of his share of the commission, the balance of which, $7,008.46, was paid to him on that date, and he acknowledged that defendants had made payment in full of all sums due him and Flax.
His authority to give the aforementioned affidavit, and the veracity of the statements therein contained, is questioned by plaintiff and by an associate of plaintiff, one Thomas J. Melancpn. They testified that David Williams had expressed a desire to disassociate himself from Pitre and had suggested to Flax that he do the same. Their assertion is denied by both Pitre and David Williams who testified to their mutual satisfaction with each other. The latter also stated that he had discussed another deal with Pitre since the consummation of the one in question.
The case presents no questions of law for our review but rather is limited to issues of fact. It is evident from the foregoing discussion that a resolution of the factual issues is dependent upon a determi *311 nation of the credibility of the witnesses, and that determination was made by the trial judge in favor of plaintiff. A reading of the entire record, including some of the correspondence between plaintiff and David Williams wherein plaintiff made certain representations that he later contradicted in his trial testimony, indicates to us that were we the court of first instance the outcome of this case may have been different. Nevertheless,'the trial judge observed and heard the witnesses and was therefore in a better position to judge their credibility than we are. For that reason the well settled jurisprudence of this state does not permit us to overturn his findings regarding the factual issues, especially when based on the credibility of the witnesses, in the absence of manifest error.
We find such error in one aspect of the trial court’s judgment,' in that it failed to give defendant credit for certain sums paid on behalf of plaintiff, Seymour Flax.
On March 1, 1971, a written contract was entered into whereby Flax and Pitre were loaned the sum of $10,000.00 by the Great South Corporation through one Bert Rowley, presumably of that corporation. Under the terms of the contract Bert Row-ley had the option of electing to receive as repayment one-third of the net profits received or earned within one year from the date of the contract as brokerage fees and/or other profits and gains due to the efforts of Flax, Pitre, and/or Allstate from whatever funds they might have accruing to them within one year from March 1, 1971, from financing any project, including the loan to Atchafalaya.
Rowley chose the latter option and it is admitted by all concerned that Atchafa-laya, through David Williams, paid Great South the full $10,000.00 for and on behalf of Flax and Pitre. One-half of that amount, or $5,000.00, certainly inured to Flax as it paid his debt for him and relieved him of any further obligation to Great South. Accordingly, this sum should have been deducted from the award to plaintiff.
For the above and foregoing reasons the judgment of the district court is amended so as to reduce it from the sum of $17,508.46 to the sum of $12,508.46 and as thus amended is affirmed. Costs of this appeal are to be borne by plaintiff-appellee.
Amended and affirmed.