BOUTALL, Judge.
This is a suit by an unlicensed loan broker to recover a fee for his services in arranging financing through a vendor’s lien and mortgage to enable the defendants to purchase a certain piece of real estate. The trial judge held that there was never any commitment made by the proposed lender to make a loan on the title as it existed, and dismissed plaintiff’s suit. From this adverse judgment, he appeals.
The facts are that the four named defendants formed a partnership under the name of “Gee-Jay Company” and had agreed to buy certain real estate for the price of $150,000. Of this amount they intended to secure financing for the amount of $110,000 and through one of the partners, Franklin H. Jones, Jr., they contacted Robert F. Talbot, Jr., plaintiff herein, to ascertain if he could arrange a mortgage loan for them. In turn, Talbot sought the services of the First National Bank of Jefferson Parish in order to obtain the neces *81 sary financing, and on December 9, 1970, he succeeded in arranging a loan of $110,000 payable on or before two years after date, payable monthly, with interest at the rate of 8^/2% per annum. The commitment, which is evidenced by a letter of the bank’s President to the bank’s attorneys, dated December 9, 1970, further discloses that the bank required a vendor’s lien to secure its interest, and specially instructed the attorneys that the vendor had inherited the property in the Succession of Jules F. Rimbolt, Jr., and that the vendor had signed a procuration to a certain Charles A. Miller as her attorney in fact, authorizing him to sign the agreement to purchase in her stead. However the bank required “We want Mrs. Bischof to act for herself in the Act of Sale.” The sale was arranged to be passed on the 21st day of December, 1970.
On December 15, 1970, Franklin H. Jones, Jr. on behalf of Gee-Jay Company signed a document acknowledging that Gee-Jay Company owed Talbot a $2,200 fee for obtaining financing from the First National Bank of Jefferson Parish which fee was to be paid on December 21, 1970 or at the Act of Sale. It is upon this document, and the preceding oral agreements between the parties, that suit is based.
The proposed sale on December 21, 1970 was never consummated between the parties. The parties to the proposed sale and loan met at the office of the Bankl? attorney for the purpose of consummation of the business, however it was noted that the vendor was appearing through her agent acting under the general Power of Attorney, despite the Bank’s request of personal appearance of the vendor. Upon it being pointed out that the vendor was a rather elderly lady, the President of the Bank, Mr. White, announced that the Bank would require at least a special Power of Attorney, and the sale was postponed. The loan commitment was never withdrawn, and there is no evidence to show whether there was any later compliance with the Bank’s request, or even whether there was any attempt at compliance. In any event, the sale was consummated several months later by virtue of financing from another bank at a lesser rate of interest, 6%% per an-num, which financing was not secured by Talbot.
It is the contention of plaintiff-appellant that his services were hired only for the purpose of . obtaining the financing, and that his fee was earned by virtue of obtaining the commitment from the First National Bank of Jefferson Parish regardless of whether or not the commitment was ever utilized. To support this he relies upon the written acknowledgment of Jones on December 15, 1970. The trial judge, however, found that the 'commitment from the Bank demanded further requirements which were never satisfied, hence, there was never any commitment made by the Bank to make a loan on the title as it existed at that time.
We note that the requirement of Mrs. Bischof appearing at the sale does not relate to the title of the property as it then existed, but rather relates to the passage of title at the act of sale. Nevertheless, we do not reach a consideration of the conditional nature of the agreement or the problem of burden of proof posed thereby, because we find a more serious obstacle to plaintiff’s recovery, that is, that the agreement itself is unenforceable by operation of law.
Plaintiff was acting as a go-between or finder for these borrowers of money to procure a loan. The record shows, and the plaintiff admits, that he was not licensed as a loan broker during the period of time here involved, although he later entered the business. The defendants refer use to certain provisions of the Securities-Blue Sky Law, which we quote. LSA-R.S. 51:701(^) provides the following definition :
“(8) fLoan broker’ means any person who engages in the business of purchas *82 ing wages or salaries or who acts as a go-between, finder or agent of a lender or borrower of money for the purpose of procuring a loan of money, or who engages in the business of guaranteeing or endorsing notes and other evidences of indebtedness.”
LSA-R.S. 51:710(D) provides for the examination and registration of loan brokers as follows:
“D. It shall be unlawful for any person to transact business in this state, either directly or indirectly, as a loan broker or as a mortgage loan company unless such person is registered in the office of the commissioner pursuant to the provisions of this section,”
LSA-R.S. 51:715(F) provides the following civil liability:
“F. No person who has made or engaged in the performance of any contract in violation of any provision of this Part or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.”
It is our opinion that the activity of Talbot comes within the definition of loan broker as set out above, and since he is not registered as provided by law, he is prevented by the provisions of LSA-R.S. 51:715(F) from bringing this suit to recover. It is contended that the provisions of this Act do no apply, because at that time Talbot was not engaged in the business of being a loan broker, but that this was only an isolated transaction. Our examination of the Statute convinces us that this is not the proper interpretation as it applies to his activities here. We note that the definition set out in Section 701(8) contains basically three parts: 1. Any person who engages in the business of purchasing wages or salaries; 2. Any person who acts a,s a go-between, finder or agent of lender or borrower of money for the purpose of procuring a loan of money; and 3. Any person who engages in the business of guaranteeing or endorsing notes and other evidences of indebtedness. We have paraphrased the Act to show more clearly the variance of the definition requirements, that is, in parts 1 and 3 the Act requires an engaging in the business of, whereas in part 2 no such requirement of engaging in business is made but the simple act of acting as a go-between for the purpose of procuring a loan of money is sufficient. Thus, when such a go-between charges for his service, he is transacting business under the provisions of 710(D), and he is prohibited from doing so unless registered.
In support of his contention, plaintiff refers us to certain jurisprudence and to a letter which he wrote to the Deputy Commissioner of Securities on July 19, 1971 (after suit was filed and answered) and secured from the the Deputy Commissioner an exemption from registration dated July 22, 1971, “available within the meaning of LRS 51:705(3).” That section of the law reads as follows:
“LSA-R.S. 51:705. Exempt transactions.
“Except as hereinafter expressly provided, the provisions of this Part shall not apply to the sale of any security in any of the following transactions:
;ji ;}c * * * *
“(3) An isolated transaction in which any security is sold, offered for sale, subscription or delivery by the owner thereof, or by his representative for the owner’s account, such sale or offer for sale, subscription or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such representative, and such owner or representative not being the underwriter of such security.”
We quote the law referred to simply because we cannot find any pertinence of *83 that exemption to the transaction here. We see no relationship between the obtaining of a loan commitment by a third party and the sale, etc. of a security by the owner or his representative.
Plaintiff refers us to the case of Sheppard v. Hulseberg, 171 La. 659, 131 So. 840 (1930) in support of his proposition that an isolated transaction grants exemption. The Act there in question concerned a real estate broker and the Court permitted recovery of a fee for sale of a piece of real estate in an isolated transaction. However, the provisions of the Act under consideration defined real estate broker as one who sold, etc. “as a whole or partial vocation”. The court simply found that the one present isolated instance was insufficient to show that plaintiff therein was following the business as a partial vocation. The other case to which we are referred is the case of Flax v. Atchafalaya Workover Contractors, Inc., 268 So.2d 308 (La.App. 3rd Cir. 1972). In that case there was no dispute as to whether or not the plaintiff Flax was licensed, and we do not find it pertinent here.
We think the plain wording of the Statute is such that any person who charges a fee for acting as a go-between in obtaining a loan is required to comply with the Statute. The Statute provides a wide variety of penalties, and we have no quarrel with the postdated exemption conferred by the Commissioner from any criminal penalties or civil penalties that he may impose. However the penalty provided in Section 715(F) is one which relates to the private parties to the agreement and these rights cannot be disturbed by the later action of the Commissioner. We therefore conclude that the acknowledgment of December 15, 1970 is unenforceable.
For the above reasons, we are of the opinion that the judgment appealed from is affirmed.
Affirmed.