304 So.2d 66 (1974)
Randy WEBSTER
v.
Chester RUSHING and La Belle Aire, Inc.
No. 9927.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Rehearing Denied December 16, 1974.
Writ Granted February 14, 1975.
Frederick Kroenke, Jr., Baton Rouge, for appellant.
James A. Wood, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
This is a suit by a loan broker to recover a fee for his services in securing a mortgage loan for the defendant. Judgment was entered for the plaintiff and defendants have appealed.
The facts are: That early in 1969, the defendants, Chester Rushing and La Belle Aire, Inc., were desirous of obtaining a mortgage loan for the purpose of constructing a 238-unit apartment complex. Defendant, Chester Rushing, contacted the plaintiff, Randy Webster, for the purpose of securing his services in obtaining the *67 requisite financing. Mr. Webster is in the business of acting as a broker for such loans and undertook to secure the mortgage loan for the defendants. As a fee for his services Mr. Webster agreed to take one percent (1%) of the $2,500,000.00 loan.
After early attempts at financing failed Mr. Rushing and Mr. Webster agreed that the latter would continue his endeavors, and, if successful, Mr. Rushing and three of his business associates with an interest in the corporation would purchase $1,000,000.00 of permanent life insurance from Mr. Webster. The commission on the life insurance contract would be taken by Mr. Webster in lieu of the one percent (1%) commission on the loan. This arrangement was beneficial to all parties, in that Rushing and his group would enjoy the insurance and Mr. Webster would receive an income tax advantage.
After about one and one-half years of negotiation, Mr. Webster was successful in obtaining the $2,500,000.00 loan from Colwell Mortgage Trust of California through his participating bank in Baton Rouge, Louisiana. Once the interim financing was obtained, Mr. Webster called upon Mr. Rushing to fulfill his obligation to purchase the life insurance. Mr. Rushing declined to do so at that time, taking the position that the purchase would be premature since permanent financing had not been funded. Later, Mr. Webster again approached Mr. Rushing to fulfill his obligations; however, Mr. Rushing attempted to delay the purchase until other and different loans were arranged and completed by Mr. Webster. This was not acceptable to the plaintiff and he began work on writing the insurance. The Rushing group completed the required physical examinations and the other arrangements preparatory to the purchase of the insurance. The policies were issued to the group; however, the members refused to accept the policies and refused to pay the premiums.
The plaintiff brought this action seeking the commissions he would have received on the ordinary life insurance policies if defendants had complied with their agreement, or, alternatively, one percent (1%) of the amount of the loan plus damages. Plaintiff seeks damages from the defendants on grounds that defendant's failure to perform has caused him embarrassment and mental anguish and has caused him to lose prestige in the business community. The trial court found, and we agree, that the plaintiff had carried his burden of proof that a contract was made, that he had performed his portion of the contract and that defendants had breached the contract by failure to purchase the agreed insurance Consequently, plaintiff should recover unless precluded by other reasons.
In his petition plaintiff alleges that he is in the business of brokering mortgage loans and he states in his testimony that he is a loan broker. The record shows that plaintiff was acting as a go-between or a finder for the defendants in his efforts to procure a loan. On cross-examination by the defendant, the plaintiff states that he is not now a licensed or registered loan broker nor has he ever been registered with the Commissioner of Securities. Prior to submitting the case for decision the defendants referred the trial court to certain provisions of the Securities-Blue Sky Law, which we quote. LSA-R.S. 51:701(8) provides the following definition:
"(8) `Loan Broker' means any person who engages in the business of purchasing wages or salaries or who acts as a go-between, finder or agent of a lender or borrower of money for the purpose of procuring a loan of money, or who engages in the business of guaranteeing or endorsing notes and other evidences of indebtedness."
LSA-R.S. 51:710(D) provides for the examination and registration of loan brokers as follows:
"D. It shall be unlawful for any person to transact business in this state, either directly or indirectly, as a loan *68 broker or as a mortgage loan company unless such person is registered in the office of the commissioner pursuant to the provisions of this section."
LSA-R.S. 51:715(F) provides the following civil liability:
"F. No person who has made or engaged in the performance of any contract in violation of any provision of this Part or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract."
In its written reason for judgment the trial court found that LSA-R.S. 51:715(F) was "in the nature of a special defense" under LSA-C.C.P. art. 1005 and that failure on the part of the defendant to give pretrial notice of the defense precluded defendant from asserting the statute in bar of plaintiff's recovery. We do not agree.
It is our opinion that the activities of the plaintiff come within the definition of "loan broker" as set out above, and since he was not registered as provided by law, he is prevented by the provisions of LSA-R.S. 51:715(F) from bringing this suit to recover under the contract. Talbot v. Jones, 288 So.2d 80 (La.App. 4th Cir. 1974). This statute is unlike LSA-R.S. 12:314 which merely governs a foreign corporations procedural capacity to sue in our courts. LSA-R.S. 51:701 et seq. is a positive rule of law which prohibits a loan broker from doing business unless he is registered with the Commissioner of Securities. LSA-R.S. 51:710(D) makes transactions of business as an unregistered broker unlawful. LSA-R.S. 51:715(F) imposes civil sanctions on the unregistered loan broker who transacts business in this state by preventing him from bringing suit on a contract made in violation of this chapter. It is not necessary that a statute of the State be specially pleaded in order that a party may rely on its provision. State ex rel. Bonnabel Land Co. v. Board of Commissioners of Fourth Jefferson Drainage District, 69 So.2d 747 (La.App.Orl.1954).
Plaintiff has alleged in his petition and has stated in his testimony that he was a loan broker. If we assume for the sake of argument that LSA-R.S. 51:715(F) is an affirmative defense, we find that the pleadings have been effectively amended. LSA-C.C.P. art. 1154 provides in pertinent part:
"When issues not raised by the pleadings or tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings."
The defendant asked plaintiff if he was registered and if he had ever been registered with the Commissioner of Securities. Plaintiff did not make the pertinent objection of expansion of the pleadings.
It is well settled that the pleadings may be enlarged by evidence adduced without objection, which is not pertinent to any of the issues raised by the pleadings, and hence would have been excluded if objected to timely. Stanley v. Jones, 201 La. 549, 9 So.2d 678 (1942); Austrum v. City of Baton Rouge, La., 282 So.2d 434 (1973).
It is unfortunate that the defendants received the fruits of the plaintiff's labor in the form of the two and a half million dollars loan without the necessity of paying for the services as they had agreed to do. The Court considered the possibility of the plaintiff recovering on the basis of quantum meruit for the work performed. However, we feel that the plain wording of the Section F of LSA-R.S. 51:715 would clearly prohibit a suit because the "purported right" would have been obtained in violation of the statute. We feel that the intent of the Legislature was to prohibit anyone except licensed brokers to engage in this activity and the plaintiff having failed to obtain such license must suffer the consequences of *69 being denied a right to seek redress in the courts.
Having reached the foregoing conclusions it is not necessary that we consider the remaining specifications of error raised by the defendant.
For the foregoing reasons the judgment of the trial court is set aside and judgment herein is rendered in favor of the defendant dismissing plaintiff's suit. Plaintiff is to bear all costs of this appeal and all costs in the trial court.
Reversed.