CHEHARDY, Judge.
Defendants-appellants, Hero Lands Company, C. J. Jackson and Leon “Sam” Du-plessis, appeal from a preliminary injunction enjoining defendants from excavating, selling and hauling earth material from Plaquemines Parish property of defendant Hero Lands over which plaintiff enjoys a servitude of drainage; from using any part of “Bucaneer Road” adjacent to the above servitude for any purpose not in accordance with the express provisions of the March 5, 1974 Plaquemines Parish letter of permission to construct and use a shell road; from conducting the business of excavating and selling earth material and/or operating a dump in any area in the Parish of Plaque-mines having an A-ll zoning classification without prior permission from the Plaque-mines Parish Commission Council and from excavating and selling earth material and/or operating a dump in the Parish of Plaquemines without an occupational license from the Parish of Plaquemines.
On August 16, 1957, Hero Lands Company and others, by signed agreement, granted “ * * * unto the said Jefferson & Plaquemines Drainage District surface ser-vitudes or the right of use for drainage canal construction and maintenance in their respective ownerships * * *.” By written agreement dated September 1,1965, the Jefferson and Plaquemines Drainage District granted surface servitudes for the establishment and maintenance of a system or network of drainage canals, seepage ditches and for road or highway purposes. It was further agreed that rights of ways for drainage canal purposes are paramount. On appeal we are concerned with only one of the drainage servitudes referred to in the 1965 agreement. In 1969 the Plaquemines Parish Commission Council took over the rights and obligations of the drainage district as to lands lying in Plaquemines Parish.
In 1973 Hero Lands requested and obtained permission from the parish to build Bu-caneer Road, which for much of its length would run alongside the northern edge of the drainage canal and within the servitude which is the subject of this suit. The March 5, 1974 letter of permission contained the proviso that the Bucaneer Road be strictly private in nature for the private use of Hero Lands Company, New City Company and Hero Wall Company and for use of their lessees for raising cattle and/or other agricultural purposes.
Plaintiff contends that due to the “control” granted drainage districts by L.R.S. 38:113, Hero Lands Company cannot remove dirt from the spoil area of the drainage servitude without permission of the drainage district; that such removal interferes with the drainage servitudes; that Hero Lands Company’s actions in selling the spoil and permitting the dumping of tree stumps without permission of the Plaquemines Parish Commission Council constituted a violation of the Plaquemines Parish zoning ordinance. Plaintiff further contends that Hero Lands failed to obtain the necessary occupational licenses from *724 Plaquemines Parish to engage in the business of selling spoil and operating a dump. There is testimony that this spoil is needed and also could be used to buttress levees and other drainage systems throughout Plaquemines Parish; that Hero Lands actually sold spoil from the drainage servitude over a 9-year period; that these sales amounted to $3,000; that the deposit of tree stumps was confined to a relatively small area; that this dumping, without payment to Hero Lands, was for the purpose of raising the level of Hero Lands; and that Hero Lands allowed the use of Bucaneer Road for this purpose.
The legal issues are these: Does earth material removed from the servitude of drainage right of way belong to the owner of the land on which the servitude is granted with all rights of ownership, including right to sell and remove, or does such earth material belong to the grantee of the servitude? We must also determine if the sale of such material dug from the drainage servitude and the use of plaintiff’s property for the dumping of tree stumps was in violation of the zoning laws of Plaquemines Parish regulating the use of A-2 rural or agricultural property and whether defendants’ actions required either parish or state occupational licenses. At issue also is whether or not the use of Bucaneer Road for this purpose is in violation of the permit of March 5, 1974. Should defendant Hero Lands have first secured an occupational license from Plaquemines Parish? Plaintiff’s testimony is that dirt is vitally needed for preserving the efficiency and for the maintenance of the drainage system, including its levees, as well as the future development of the drainage system area. Plaintiff contends it should have reasonable control of the spoil area for a reasonable purpose; that it does not seek unlimited control; and that the control it seeks over the spoils is permitted under the provisions of L.R.S. 38:113, which reads:
“The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels.”
Justice v. Bourgeois, 288 So.2d 106 (La.App.4th Cir. 1974), is relied upon by defendants as authority for their right to remove and sell the spoil from the servitude. The court said at page 109:
“We first consider the question of ownership of the soil dredged from the canal. The case of Scott v. Red River-Bayou Pierre Levee & D. Dist., 7 So.2d 429 (La. App.2d Cir. 1942), discussed Act 61 of 1904 (LSA — R.S. 38:113) and determined that the authority granted to the governmental agency over private property was restricted to maintaining the efficiency of the public drainage channels and did not vest the ownership in the levee or drainage district. As pointed out in the case of Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App.2d Cir. 1969), the Scott case did not hold that Act 61 of 1904 created an additional servitude for drainage other than the one provided by LSA-C.C. art. 665. Under the reasoning of Scott, we conclude in this case the spoil dredged from the canal on the Justice property is one of the rights of ownership vested in the plaintiffs, and therefore the Parish had no authority to give it away.”
The Court of Appeal for the Second Circuit in Scott v. Red River-Bayou Pierre Levee and D. Dist., 7 So.2d 429 (1942), rejected the drainage district’s contention that the “control” envisioned in the statute was all-encompassing. Said the Court:
“It is our opinion the control vested in the drainage District by said Act has reference only to maintaining the efficiency of the canal after it has been constructed and does not vest ownership of the strip of land in the drainage District. * * * ” 7 So.2d at 432.
*725 We agree with defendants’ position that Justice v. Bourgeois, supra, decided that the spoil dredged from the canal servitude belongs to the landowner, not to the public body. Plaintiff does not deny defendants’ ownership of the spoil, but does dispute defendants’ right to remove and/or sell the spoil without the permission of plaintiff. Justice recognized that spoil dredged from the drainage canal was a right of ownership vested in the property owner, and the parish which dredged the canal pursuant to the servitude had no right to give it away. Justice did not give the landowner the right to remove the spoil taken from the area of the servitude without the consent of the parish enjoying the servitude. There is no pretense that Plaquemines Parish acquired anything more than a servitude of drainage over the land in question. It did not acquire ownership of the land or the spoil. But we hold that plaintiff has the use and control of the spoil so long as it is used or may be used in connection with the drainage servitude from which it was dug and further hold that defendants cannot give away or remove the spoil and/or sell same without the consent of plaintiff. Chalin Perez, President of the Plaquemines Parish Commission Council, testified:
“Q In your opinion as the head of the Commission formal government which makes you head of both the legislature as well as the executive functions of this Parish, is there essential and necessary use for that soil for public purposes as provided for drainage and levee fills as was removed from the servitudes that’s in litigation here?
A There is no question that the need is there and that the material will be used at some time. Mr. Hero immediately in front of that area now proposes to build a subdivision. It is quite conceivable that we might, have to close up some of these open canals and which may require that that material might be used to cover up the pipes. It is impossible to say when it will be needed, but for the public needs,, there will be several purposes.” (Emphasis added.)
The Parish did acquire from Hero Lands a personal servitude, a right of use to dig and maintain a drainage canal.
“A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title.” C.C. art. 642.
It does not take a stretch of the imagination to recognize that use of the spoil removed from the dredged canal might again be needed to increase or decrease the flow of water through the drainage canal. This is certainly an accessory right of use contemplated or that should have been contemplated by defendants when granting this servitude of drain.
Defendants argue that:
“The second clause of Article 642 qualifies the grant of accessory rights to the servitude owner with the important proviso that ‘a greater burden is not imposed on the property unless otherwise stipulated in the title’. Nowhere in the agreement is there any stipulation that the Drainage District will own the spoil or control the servitude right-of-way to such an extent as to deprive the landowner from removing the spoil or using it himself.
“As previously noted, the primary reason that Hero Lands began to remove the spoil in 1970, was for the purpose of improving the surface drainage of its own land. If the Drainage District is permitted to store the spoil excavated from the canal and Hero Lands is forced to endure the resulting poor drainage of its land, a greater burden will be imposed on the property, and this is clearly prohibited by Article 642.”
We do not agree. L.R.S. 38:113 does anticipate limited control by the Parish over this spoil to maintain the efficiency of the drainage channel. In our opinion this limited control of the spoil does not impose a *726 greater burden on the property than was anticipated by the granting of the servitude. A servitude includes such accessory rights as may be necessary for its exercise and the landowner cannot diminish the servitude owners’ rights or make the exercise of them more difficult or inconvenient. Rock Island, A. & L. R. Co. v. Gournay, 205 La. 164, 17 So.2d 21 (1944); Patout v. Lewis, 25 So. 134 (La.1899); and Arkansas Louisiana Gas Co. v. Cutrer, 30 So.2d 864 (La.App.2d Cir. 1947).
We agree with .defendant Hero Lands that its actions in selling the spoil from the servitude right of way and permitting the occasional deposit of tree stumps on its land are, at most, accessory uses and therefore not violations of the Plaquemines Parish zoning ordinances; nor are such actions to be construed as the conducting of businesses that would require the securing of occupational licenses. Thus should Hero Lands apply for and secure consent to remove spoil from the property on which it has granted a servitude or from its other lands not subject to the servitude or control of the Parish it would not be in violation of the parish zoning ordinances. Plaintiff’s selling of earth material from its own land or permitting the occasional dumping of tree stumps thereon to improve low areas are permitted accessory uses of the land and not the operation of businesses requiring permission from the Parish or parish and/or state occupational licenses. The Plaquemines Parish ordinance permits “accessory” uses of property defined as that “which is incidental to the main use of the premises and ‘accessory uses’ when located on the same lot” are expressly permitted in the A-l district. In A-2 districts, such as the subject property, all uses permitted in the A-l district are .allowed. Therefore defendants may use their property for accessory purposes. We hold that the sale of spoil and the dumping of tree stumps to raise the level of the Hero Lands tract adjacent to Bucaneer Road are accessory uses incidental to the main use of the premises and are allowable under the A — 11 zoning classification of Plaquemines Parish. It follows, therefore, that defendants should not be enjoined from using Bucaneer Road for these legal private purposes, which uses are not in violation of the letter of permission of March 5, 1974.
Plaintiff in urging the need for defendants to secure an occupational license relies on Section 6 of Ordinance 10, which provides:
“For every business of selling building materials at retail, such as sand, gravel, lumber, cement, brick, stone or other building material, whether the business be conducted as principal, or agent on commission, or otherwise, the license shall be- fixed and graded in classes, and for each separate establishment, there shall be a separate license fixed and graded in classes, which said grades, classes and rate of tax are hereby declared to be the same as those set forth in R.S. 47:353 as amended.”
We do not find that defendant Hero Lands was conducting the business of selling earth material within the meaning of this provision. Furthermore the record does not support the finding that Hero Lands was operating a land fill business and accordingly was not violating the zoning ordinance or parish or state requirements for an occupational license. The word “business” is not defined in the revised statutes dealing with occupational license taxes. However, for sales tax purposes, which are extremely broad, “business” is defined as not including “the occasional and isolated sales by a person who does not hold himself out as engaged in business” L.R.S. 47:301(1). “Engaging in business in this state” is defined as including: “[Mjaintaining directly, indirectly, or through a subsidiary, an office, distribution house, sales house, warehouse, or other place of business or by having an agent, salesman or solicitor operating within the state under the authority of the seller or its subsidiary irrespective of whether such place of business, agent, salesman or solicitor is located in this state permanently or temporarily or whether such seller or subsidiary is qualified to do business in this state”. L.R.S. 47:301(4)(h).
*727 Hero Lands did not “engage in business” as contemplated by L.R.S. 47:301(4)(h). It is an established principle that an isolated or occasional transaction does not constitute the doing of business as contemplated by the occupational licensing law.
In view of our holding that defendants have not violated the Plaquemines Parish zoning ordinance, the Parish’s occupational license permit ordinance or the state occupational license law there is no need to address the issue of whether or not the Parish can enjoin an activity which it would also prosecute as an ordinance violation.
We affirm the judgment of the trial court so far as it orders a preliminary injunction enjoining all defendants from excavating or removing without permission of the Plaquemines Parish Commission Council earth material from the servitudes in the Parish of Plaquemines which are the subject of this suit. In all other respects the judgment appealed from is reversed and the case is remanded for further action consistent with the opinions expressed herein.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.